UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ELLIOTT HOLLY,

Petitioner,

v.

RICK HARRY,

Respondent.

Civil File No. 01-1324 (JMR/FLN)

**REPORT AND RECOMMENDATION**

THIS MATTER is before the undersigned United States Magistrate Judge on Petitioner's Application for habeas corpus relief under 28 U.S.C. § 2254. (Docket No. 1.) The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, it is recommended that the Petition for Writ of Habeas Corpus be SUMMARILY DISMISSED pursuant to Rule 4 of The Rules Governing Section 2254 Cases In The United States District Courts.[1]

## I. BACKGROUND

Petitioner has a history of committing violent sexual assaults against women. In 1985, he was convicted of first degree criminal sexual conduct and sentenced to 108 months in state prison. When Petitioner was approaching the end of his prison term, prison authorities petitioned to have him civilly committed as a "sexual psychopathic personality." See Minn.Stat. § 253B.185. Following a civil commitment trial, an initial

---

[1] Rule 4 provides that "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

"Order for Commitment" was entered against Petitioner on April 17, 1992. (See Affidavit of Michael J. Bigelow, [Docket No. 6], attachment entitled "Complete Chronology Of Legal Proceedings Following Civil Commitment," [hereafter "Bigelow Chronology"], p. 1.[2]) Petitioner appealed that initial civil commitment order, but the order was upheld by the Minnesota Court of Appeals. In the Matter of Holly, No. C9-92-1055 (Minn.App. 1992), 1992 WL 238360.

In 1994, a new civil commitment order was entered, by which Petitioner was committed to the Minnesota Security Hospital indeterminately. Petitioner again appealed, and the Minnesota Court of Appeals again upheld his commitment. In the Matter of Holly, No. C9-94-492 (Minn.App. 1994), 1994 WL 396314. The Minnesota Supreme Court denied Petitioner's request for further review of the indeterminate commitment order. Id.

Thereafter, Petitioner filed a petition with the Commissioner of the Minnesota Department of Human Services, ("DHS"), asking to be discharged from custody pursuant to Minn.Stat. § 253B.18., subd. 5. Petitioner's application for discharge was reviewed by an Administrative Special Review Board, (see Minn.Stat. § 253B.18, subd. 4c), which recommended to the DHS Commissioner that Petitioner should not be discharged. (Bigelow Chronology, p. 2.) On January 25, 1995, the Commissioner denied Petitioner's discharge request. (Id.) Petitioner appealed the Commissioner's denial of discharge ruling to the Supreme Court Appeal Panel, ("SCAP"), pursuant to Minn.Stat. § 253B.19,

[2] Petitioner's original habeas corpus petition did not include a complete history of relevant state court proceedings. Therefore, by order dated August 7, 2001, (Docket No. 3), the Court directed Petitioner to submit further information about the procedural background of his case. In response to that order, Petitioner filed the "Bigelow Chronology," which was prepared by one of his former attorneys.

and on October 30, 1995, the SCAP affirmed the Commissioner's ruling. (Bigelow Chronology, p. 2.) Petitioner then appealed the SCAP ruling to the Minnesota Court of Appeals, (as permitted by Minn.Stat. § 253B.19, subd. 5), but he lost that appeal too. Holly v. Gomez, C5-95-2587 (Minn.App. 1996), 1996 WL 146730. The State Supreme Court again denied Petitioner's request for further review. Id.

In 1997, Petitioner filed another request for discharge, but the DHS Commissioner once again denied his request, and the SCAP once again upheld the Commissioner's ruling. (Bigelow Chronology, p. 3.)

Last year, Petitioner filed a third request for discharge, and the Special Review Board conducted another hearing. (Id.) On January 8, 2001, the Board recommended that Petitioner's third discharge application should be denied. (Id.) Nine days later, the DHS Commissioner adopted that recommendation, and denied Petitioner's most recent request for discharge. (Id.) According to the Bigelow Chronology, Petitioner did not seek SCAP review of the Commissioner's latest denial of discharge, nor did he seek any state court review of that ruling. (Id.)

Petitioner's present habeas corpus petition was filed on July 20, 2001. While it is evident that Petitioner is seeking federal habeas corpus review of some state proceeding, he has not clearly identified which proceeding he is attempting to challenge here. Presumably, he is seeking review of either (a) his 1985 criminal conviction, (b) his 1992 initial civil commitment and/or his 1994 indeterminate civil commitment, or (c) one or more of the DHS Commissioner's three denial of discharge rulings.

For the reasons discussed below, the Court concludes that none of the state proceedings relating to Petitioner's confinement can properly be reviewed in a federal habeas corpus action at this time. It will therefore be recommended that this action be summarily dismissed.

## II. DISCUSSION

### A. Petitioner's Criminal Conviction

Petitioner's last criminal conviction, (the only one that is even arguably at issue here), was entered in 1985 -- approximately sixteen years ago. Given that Petitioner was convicted so long ago, we must consider whether any present habeas challenge to his conviction is barred by the one-year statute of limitations prescribed by 28 U.S.C. § 2244(d)(1)(A). Because Petitioner's conviction was entered before the statute of limitations was enacted, he had one year from the date of enactment, April 24, 1996, in which to challenge his conviction in a federal habeas action. Nichols v. Bowersox, 172 F.3d 1068, 1073 (8th Cir. 1999) (the statute of limitations for habeas cases never begins to run any earlier than the date when the statute was enacted -- April 24, 1996). The one-year "grace period" established by Nichols expired on April 24, 1997. See Ford v. Bowersox, 178 F.3d 522, 523 (8th Cir. 1999) (petitions filed on or before April 24, 1997, are not barred by the statute of limitations). Petitioner's current petition, however, was not filed until more than four years after that date. Thus, any federal habeas challenge to Petitioner's state criminal conviction is clearly time-barred.

B. Petitioner's Initial and Indeterminate Civil Commitments

Petitioner's initial civil commitment in 1992, and his subsequent indeterminate commitment in 1994, are also subject to the § 2244(d)(1)(A) one-year statute of limitations. Duncan v. Walker, 121 S.Ct. 2120, 2126 (2001). The statute of limitations deadline for those two civil commitment orders also expired one year after the enactment of the statute, i.e. on April 24, 1997. Thus, it is now too late for Petitioner to seek federal habeas review of those commitment orders, as well.

C. Petitioner's Various Discharge Petitions

The statute of limitations also has expired with respect to Petitioner's first two applications to be discharged from his civil commitment. Both of those proceedings were completed by the end of 1997, so the one-year statute of limitations for seeking federal habeas review of those proceedings expired by the end of 1998.

The only legal proceedings pertaining to Petitioner's civil commitment that have occurred within the past year, (indeed, the only such proceedings that have occurred since 1997), are those stemming from Petitioner's most recent request to be discharged from his indeterminate civil commitment. The Minnesota DHS Commissioner denied that latest petition for discharge on January 17, 2001, and Petitioner's present habeas petition was filed within a year after that date. While federal habeas review of Petitioner's latest discharge proceedings is not barred by the one-year statute of limitations, those proceedings cannot be reviewed here for a different reason – namely, because Petitioner has not exhausted his state court remedies with regard to those proceedings.

It is well-established that a federal court will not entertain a petition for a writ of habeas corpus on behalf of a person in state custody unless the person has first exhausted all available state court remedies for all claims. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). This exhaustion of state remedies requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal constitutional errors raised by state detainees. O'Sullivan, 526 U.S. at 842; Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Rose v. Lundy, 455 U.S. at 518-19; Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988). "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts,... state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845. In other words, a prisoner must fairly present all of his constitutional claims to the highest available state court before seeking relief in federal court.

In this case, it is readily apparent that Petitioner has not satisfied the exhaustion of state remedies requirement. After his latest petition for discharge was denied by the DHS Commissioner in January 2001, Petitioner could have appealed to the SCAP, but he did not. If the SCAP had denied his appeal, Petitioner could have sought further review in the Minnesota Court of Appeals, and ultimately (if necessary) in the Minnesota Supreme Court. That, however, did not occur here. Because it clearly appears on the face of his

submissions that Petitioner has not exhausted his available state remedies for challenging the DHS Commissioner's ruling on his latest discharge petition, that ruling cannot be reviewed in a federal habeas corpus action.

## III. CONCLUSION

For the reasons discussed above, the Court concludes that Petitioner's current habeas corpus petition must be summarily dismissed. If Petitioner is challenging (a) his 1985 criminal conviction, (b) his 1992 and/or 1994 civil commitment orders, or (c) the denial of his first two applications for discharge from his civil commitment, his petition is barred by the one-year statute of limitations. If Petitioner is challenging the DHS Commissioner's denial of his latest discharge application, his petition is barred by the exhaustion of state remedies requirement.

At this point, the Court notes, it would be futile for Petitioner to attempt to exhaust his state remedies with regard to his latest application for discharge from commitment. He was required to seek SCAP review of the Commissioner's ruling on that application within thirty days. Minn.Stat. § 253B.19, subd. 2. It is now much too late to pursue that remedy.

However, Petitioner still can challenge his ongoing indeterminate commitment by filing an entirely new discharge petition. Although such a petition cannot be filed within six months after an adverse ruling on an earlier petition, (Minn.Stat. § 253B.18, subd. 5(a)), that limitation should not affect Petitioner at this point, because it has now been more than six months since his last discharge petition was denied. Thus, if Petitioner still wants to challenge his civil commitment, he will have to file a new petition for discharge in accordance with the applicable state statutes. If that new petition is denied by the DHS

Commissioner, Petitioner will have to appeal to the SCAP, and, if necessary, he will thereafter have to seek judicial review in the Minnesota Court of Appeals and the Minnesota Supreme Court. Petitioner will not be eligible to seek federal habeas corpus relief until he has fully exhausted all of those state remedies with respect to each constitutional claim that he seeks to raise in federal court. Because Petitioner might still be able to challenge his civil commitment in some future habeas petition – after exhausting all remedies available under state law -- it will be recommended that the current petition be dismissed without prejudice.

Finally, the Court notes that Petitioner did not pay the $5 filing fee for his petition, (see 28 U.S.C. § 1914(a)), but instead filed an application seeking leave to proceed in forma pauperis, ("IFP"). (Docket No. 2.) Because Petitioner has failed to state a habeas corpus claim on which relief can be granted, his IFP application must be denied. See 28 U.S.C. § 1915(e)(2)(B)(ii); see also, Kruger v. Erickson, 77 F.3d 1071, 1074, n. 3 (8th Cir. 1996) (per curiam) (IFP application should be denied where habeas petition cannot be entertained).

## IV. RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

(1) Petitioner's application for leave to proceed in forma pauperis, (Docket No. 2), be **DENIED**; and

(2) Petitioner's Application for a Writ of Habeas Corpus, (Docket No. 1), be **DISMISSED WITHOUT PREJUDICE.**

DATED: ~~September~~ October 12, 2001

FRANKLIN L. NOEL
Chief Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

**Please forward this announcement to the recipient of this fax.**

---

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

| | | |
|---|---|---|
| 700 Federal Building | 202 U.S. Courthouse | 417 U. S. Courthouse |
| 316 North Robert Street | 300 South Fourth Street | 515 West First Street |
| St. Paul, MN 55101 | Minneapolis, MN 55415 | Duluth, MN 55802 |
| (651) 848-1100 | (612) 664-5000 | (218) 529-3500 |